**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 12, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

KENNETH G. LAIN, JR.,

      Defendant-Appellant.

No. 10-3201

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 2:10-cr-20029-CM)**

---

John R. Osgood, Lee's Summit, Missouri, for Defendant-Appellant.

Christopher J. Allman, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Kansas City, Kansas, for Plaintiff-Appellee.

---

Before **HOLMES** and **BALDOCK**, Circuit Judges, and **JOHNSON**, District Judge.[*]

---

**BALDOCK**, Circuit Judge.

    A jury acquitted Defendant Kenneth G. Lain, Jr., of one count of delivering a firearm without a federal license in violation of 18 U.S.C. §§ 922(a)(5) and

---

[*] The Honorable William P. Johnson, District Court Judge, District of New Mexico, sitting by designation.

924(a)(1)(D). After his acquittal, Defendant filed a motion for attorney's fees under the Hyde Amendment, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (codified at 18 U.S.C. § 3006A Note). The district court denied his motion, and Defendant appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

During a traffic stop in September 2009 in Shawnee, Kansas, police discovered Defendant possessed a .40 caliber Glock pistol ("Glock") owned by Thomas Skiver. Law enforcement personnel conducted additional inquiries into Defendant's activities. Upon further investigation, an agent with the Bureau of Alcohol, Tobacco, and Firearms (ATF) learned Skiver let Defendant borrow the Glock, ostensibly for target practice. Instead, Defendant convinced Thomas Hart to let him borrow a .38 caliber Smith & Wesson revolver ("S&W"), the gun at issue in the prosecution below, by giving Hart the Glock as "collateral." Defendant and Hart were at Defendant's house in Missouri in August 2009 when Hart let Defendant borrow his S&W in exchange for the Glock.

Later in August 2009, Defendant took the S&W to Kansas, where he gave it to Carroll Hill. Defendant told Hill the S&W was a gift. Hill knew the S&W previously belonged to Hart but thought Defendant had legally acquired it from Hart and intended to present it to Hill as a gift. Both Hill and Defendant claimed they were unaware that federal law requires transfers of firearms from state to state to be done through licensed firearm dealers. Some time after this transfer, Defendant

2

requested that Hart return the Glock because it actually belonged to Skiver. Hart did so, and Defendant thus possessed the Glock during the traffic stop in September 2009. Hill continued to retain the S&W at that time.

Based on these circumstances, a grand jury returned an indictment in February 2010 charging Defendant with willfully transferring a firearm (the S&W) across state lines without the proper license to another individual who also lacked the proper license, in violation of 18 U.S.C. §§ 922(a)(5) and 924(a)(1)(D). The Government then discovered Defendant had been indicted for one count of possession of a stolen firearm in Missouri. Because Defendant told the district court he was about to be deployed to Iraq through his service in the reserves, the district court placed him on pretrial diversion. Rather than determine whether the indictment was still pending, the Government relied on its knowledge of standard practices in United States Attorney's offices to conclude that defendants generally remain under indictment while on diversion.[1] Accordingly, in April 2010, the Government presented the grand jury with a superseding indictment, this time including both the original count and a second count charging Defendant with committing the first count while under indictment for another crime punishable by a term of imprisonment exceeding one year.

---

[1] Under the Agreement for Pretrial Diversion, Defendant agreed to pay restitution, refrain from violating any law, attend school or work regularly, and otherwise comply with program conditions. Upon completing the pretrial diversion program, he would not be subject to prosecution for his offense.

Unfortunately for the Government, the Missouri indictment had actually been dismissed long before the superseding indictment was filed. After he was placed on diversion, Defendant moved for a dismissal of the indictment, which was granted in 2008. Because Defendant did not transfer the S&W until 2009, he did not commit the offense charged in the superseding indictment while under indictment in the Missouri case. As soon as the Government discovered the Missouri indictment had, in fact, been dismissed, the Government moved to dismiss the second count of the superseding indictment. The district court did so.

Because the crime with which Defendant was charged requires a willful violation of the statute, his knowledge was the primary issue at trial. See 18 U.S.C. § 924(a)(1)(D) (providing penalties for anyone who "willfully violates any other provision of this chapter"). The Defendant argued he should be acquitted because he did not know his conduct was unlawful. The jury acquitted Defendant. He then moved for attorney's fees under the Hyde Amendment. After the district court denied his motion, he appealed. On appeal, the only issue is whether the district court erred by failing to grant Defendant attorney's fees under the Hyde Amendment, which permits defendants in criminal cases to recover attorney's fees when the Government's position was vexatious, frivolous, or in bad faith.[2]

---

[2] The complete text of the Hyde Amendment provides:

During fiscal year 1998 and in any fiscal year thereafter, the court, in
(continued...)

4

II.

We have not yet considered what standard of review applies to a district court's denial of a defendant's request for attorney's fees under the Hyde Amendment. The Hyde Amendment indicates fee awards should be given pursuant to the procedures and limitations of the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA). We review a district court's determinations on EAJA fee awards for an abuse of discretion. Pierce v. Underwood, 487 U.S. 552, 559–63 (1988); see also R.M. Inv. Co. v. U.S. Forest Serv., 511 F.3d 1103, 1109 (10th Cir. 2007). The

---

[2](...continued)
any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) pending on or after the date of the enactment of this Act [Nov. 26, 1997], may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code. To determine whether or not to award fees and costs under this section, the court, for good cause shown, may receive evidence ex parte and in camera (which shall include the submission of classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal. Fees and other expenses awarded under this provision to a party shall be paid by the agency over which the party prevails from any funds made available to the agency by appropriation. No new appropriations shall be made as a result of this provision.

Pub. L. No. 105–119, § 617, 111 Stat. 2440, 2519 (1997) (codified at 18 U.S.C. § 3006A Note).

parties agree the same standard should apply here. Additionally, all our sister circuits that have addressed the relevant standard of review have concluded an abuse of discretion review is appropriate. See United States v. Beeks, 266 F.3d 880, 883 (8th Cir. 2001); United States v. Wade, 255 F.3d 833, 839 (D.C. Cir. 2001); United States v. True, 250 F.3d 410, 421–22 (6th Cir. 2001); United States v. Lindberg, 220 F.3d 1120, 1124 (9th Cir. 2000); In re 1997 Grand Jury, 215 F.3d 430, 436 (4th Cir. 2000); United States v. Truesdale, 211 F.3d 898, 905 (5th Cir. 2000); United States v. Gilbert, 198 F.3d 1293, 1298 (11th Cir. 1999). We agree and hold that we review a district court's determination of a defendant's request for attorney's fees under the Hyde Amendment for an abuse of discretion.

## III.

We now consider whether the district court abused its discretion when it denied Defendant's claim for attorney's fees under the Hyde Amendment after he was acquitted. To interpret the Hyde Amendment, we turn first to its text. See Conrad v. Phone Directories Co., Inc., 585 F.3d 1376, 1381 (10th Cir. 2009). We apply the plain and ordinary meaning of the statutory text and may consult a dictionary to determine that meaning. Id. The text of the Hyde Amendment provides that attorney's fees and costs are available to a defendant when the district court finds the Government's position was "vexatious, frivolous, or in bad faith." Pub. L. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (codified at 18 U.S.C. § 3006A Note). Vexatious means "without reasonable or probable cause or excuse; harassing;

6

annoying." Black's Law Dictionary 1596 (8th ed. 2004). Frivolous means "[l]acking a legal basis or legal merit; not serious; not reasonably purposeful." Id. at 692. Bad faith means "[d]ishonesty of belief or purpose." Id. at 149. In this appeal, Defendant argues the Government's position was vexatious, frivolous, and in bad faith because the prosecutor (1) had an improper motive, (2) wrongly sought the superseding indictment, and (3) prosecuted Defendant without any evidence that he willfully violated federal gun laws.

A.

To demonstrate improper motive, Defendant relies on Hill's testimony about his meeting with the prosecutor. Hill testified:

> [S]he told me she realized that "a lot of people transfer guns across State lines but that was not the real issue" . . . . She told me she was "concerned about Lain going all postal" and that was really her concern and "why she filed the case." She said she was more concerned "about the way Lain acted." She also did not seem to believe he acquired the .38 he gave me the way that Mr. Hart explained it happened.

Appellant's App. at 129. Defendant argues these facts demonstrate selective or vindictive prosecution because (1) someone similarly situated (Hill) was not prosecuted and (2) the decision to prosecute was based on the impermissible ground of "depriv[ing] him of Second Amendment rights because of his non-charge related conduct and alleged bizarre behavior and perceived fascination with firearms." Appellant Br. at 23 n.2. See United States v. Deberry, 430 F.3d 1294, 1299 (10th Cir. 2005) (outlining the standard for selective prosecution claims). Defendant did

7

not move for dismissal of the indictment based on selective prosecution but seems to rely on this concept to demonstrate the Government's position was vexatious, frivolous, and in bad faith.

The Government argues it did not prosecute Defendant on the basis of any discriminatory purpose. Rather, it emphasizes prosecutors' ability to bring criminal charges as long as they have "probable cause to believe that the accused committed an offense defined by statute." United States v. Armstrong, 517 U.S. 456, 464 (1996). As the district court noted, "to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" Id. at 465(quoting United States v. Chemical Foundation, Inc., 272 U.S. 1, 14–15 (1926)).

We agree with the district court that Defendant failed to present clear evidence of selective or vindictive prosecution. Hill was not similarly situated to Defendant because he received the S&W as a gift, with no reason to suspect anything suspicious or unlawful had taken place. Defendant, on the other hand, engaged in a series of deceptions to obtain both the Glock and the S&W. The prosecutor believed probable cause for the prosecution existed based on that deceptive conduct. Further, we do not think evidence that the prosecutor was "concerned about Lain going all postal" is "clear evidence" of discriminatory intent or even, as Defendant argues, intent to deprive him of his Second Amendment rights based on conduct unrelated to the charged offense. In any event, the prosecutor's remarks to Hill do not demonstrate

8

that the prosecution of Defendant was vexatious, frivolous, or in bad faith. Even if these remarks demonstrate the prosecutor's animosity toward Defendant, "in and of itself, such evidence cannot meet the burden of demonstrating that the prosecution was commenced in bad faith or to harass." Phelps v. Hamilton, 59 F.3d 1058, 1067 (10th Cir. 1995).

B.

Defendant also claims the prosecutor acted "with less than a pure motive" in bringing the superseding indictment charging him with committing the original offense while under indictment for another felony offense in Missouri. When it considered this argument, the district court concluded:

> Nothing in the record suggests that the government sought the superseding indictment for the purpose of harassing, irritating, or annoying defendant. Nor is there evidence, aside from defendant's conclusory accusations, that the prosecution was motivated by ill will or malice. The count allegedly obtained by misconduct was dismissed at the request of the government immediately after it discovered its error, and the case proceeded to trial on the original charge and according to the same schedule as previously set.

Appellant's App. at 134.

Though the Government was mistaken in thinking Defendant was under indictment in Missouri, and though it should have confirmed its belief before filing a superseding indictment, the Government moved to dismiss the superseding indictment as soon as it realized its mistake. We think the district court did not abuse its discretion in concluding the Government did not act based on an improper

9

motive. Sloppy work alone does not support a claim of vexatiousness, frivolousness, or bad faith, especially when the Government acted promptly to correct its error.

C.

Lastly, Defendant argues no evidence exists to demonstrate that he intended to violate federal law because he did not file off the serial numbers or otherwise attempt to avoid detection by ATF agents. Consequently, Defendant claims, the Government lacked evidence on an essential element of the offense and its prosecution of him was frivolous. The Government contends, on the contrary, that its position was supported by substantial evidence, with a reasonable likelihood of success. Defendant was charged with willfully transferring a firearm without a license in violation of 18 U.S.C. §§ 922(a)(5) and 924(a)(1)(D). At trial, the Government had to prove beyond a reasonable doubt that (1) Defendant transferred the S&W to Hill; (2) Defendant and Hill resided in different states; and (3) Defendant "willfully violate[d]" 18 U.S.C. § 922(a)(5). 18 U.S.C. §§ 922(a)(5) and 924(a)(1)(D). As Defendant and the district court note, "[t]he issue of [D]efendant's intent was clearly the question before the jury." Appellant's App. at 133. The Government argues it presented the testimony of six witnesses, two firearm exhibits, and verification that neither Defendant nor Hill possessed the necessary license. At trial, the Government relied on "defendants' conduct in deceiving his friends out of their guns and gifting the .38 caliber [S&W] to Hill, when the gun was not his to give" to show his unlawful intent. Id.

10

The district court also noted "there was no evidence that defendant knew about the statute." Id. Knowledge of the particular statute at issue, however, is not necessary. As the district court explained, the Supreme Court has made clear that ignorance of the law is no excuse. See, e.g., Bryan v. United States, 524 U.S. 184, 198–99 (1998). We have also said a defendant can willfully violate the law by doing something he knows to be illegal or by intentionally undertaking an act he knows to be wrongful. United States v. Wenger, 427 F.3d 840, 851–52 (10th Cir. 2005). Thus, as the district court reasoned, the Government attempted to demonstrate Defendant knew his actions in transferring the S&W to Hill were unlawful, but the jury did not agree. We conclude the district court did not abuse its discretion in concluding a legal and factual basis existed for the charge. As a consequence, the Government's prosecution of Defendant was not frivolous.

D.

Defendant concludes his argument with a plea that we consider the totality of the circumstances and conclude the Government's position as a whole was frivolous, vexatious, and in bad faith, rather than "compartmentaliz[ing] fault" as he says the district court did. Considering the Government's position as a whole, we cannot conclude the district court abused its discretion in concluding that, taken together, Defendant's allegations do not meet the standard necessary for him to obtain fees under the Hyde Amendment. He has not shown the Government's position was vexatious, frivolous, or in bad faith.

11

AFFIRMED.