PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2294
_____

UNITED STATES OF AMERICA

v.

LOUIS MANZO,
                              Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 09-cr-00759)
District Judge:  Hon. Jose L. Linares
_____

Submitted Under Third Circuit LAR 34.1(a)
March 5, 2013

Before:  SCIRICA, JORDAN, and ROTH, *Circuit Judges*.

(Filed: March 25, 2013)
_____

Louis Manzo
409 8th Avenue
Belmar, NJ   07719
        *Appellant, Pro Se*

Mark E. Coyne, Esq.
Mark J. McCarren, Esq.
Office of United States Attorney
970 Broad Street – Rm. 700
Newark, NJ   07102

Glenn J. Moramarco, Esq.
Office of United States Attorney
Camden Federal Building
401 Market Street, Fourth Floor
Camden, New Jersey 08101
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Under a statutory provision known as the "Hyde Amendment," a district court in criminal cases "may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust." Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997), *reprinted in* 18 U.S.C. § 3006A, Statutory Note. Louis Manzo appeals a

2

decision of the United States District Court for the District of New Jersey denying him such relief. For the following reasons, we will affirm.

## I. Background

In October 2009, a grand jury returned a six-count indictment against Manzo, charging him with four counts of conspiring and attempting to commit extortion, in violation of 18 U.S.C. §§ 1951(a) & 2 (the "Hobbs Act"), and two counts of traveling in interstate commerce to promote and facilitate bribery, in violation of 18 U.S.C. §§ 1952(a)(3) & 2 (the "Travel Act"). In pertinent part, the Hobbs Act defines "extortion" as "the obtaining of property from another, with his consent, induced … under color of official right." *Id.* § 1951(b)(2). The relevant portions of the Travel Act criminalize "travel[] in interstate … commerce … with intent to … promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." *Id.* § 1952(a)(3). An "unlawful activity" includes "bribery" as established by "the laws of the State in which [the bribery is] committed." *Id.* § 1952(b).

The government alleged that Manzo, while he was a candidate for mayor of Jersey City, New Jersey, sought cash payments and campaign contributions from Solomon Dwek, who was posing as a real estate developer, and that, in exchange, Manzo indicated he would help Dwek in the future with matters involving Jersey City's government. According to the indictment, Manzo and his brother, Ronald Manzo, accepted as bribes three cash payments prior to the election, totaling $27,500. The indictment also alleged that Dwek had agreed to pay additional money after the election, assuming

3

Manzo won (which he did not). Unbeknownst to the Manzo brothers, Dwek was a government informant.

On May 18, 2010, following a motion to dismiss filed by Manzo, the District Court dismissed each count alleging that Manzo had violated the Hobbs Act. The Court held that the alleged extortion did not constitute a violation of the Act because Manzo was not a public official at the time of the conduct and therefore could not have acted "'under color of official right.'" (Order on Motion in Limine at 24 (D.N.J. May 18, 2010), ECF No. 33 (quoting 18 U.S.C. § 1951(a)).) The Court did not dismiss the remaining Travel Act charges, however, reasoning that "the plain reading of" New Jersey's bribery statute (Supplemental App. at 166) – which provides that "[i]t is no defense to prosecution … that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office … or for any other reason," N.J. Stat. Ann. § 2C:27-2 – "is that it encompasses prosecutions where the person whom the action was sought to influence was not yet qualified or [able] to act" (Supplemental App. at 166).

The government filed an interlocutory appeal pursuant to 18 U.S.C. § 3731 challenging the dismissal of the Hobbs Act charges, and we affirmed. *See United States v. Manzo*, 636 F.3d 56 (3d Cir. 2011). Although we acknowledged that whether the Hobbs Act applies to a candidate for public office (as opposed to someone who is already in office) is "a significant and novel question" that was "creatively framed and well-presented by the government," *id.* at 61, we ultimately affirmed the holding of the District Court, reasoning that, "[i]n accordance with the legislative history, the congressional purpose underlying the Hobbs Act and

4

centuries of interpretation of the phrase 'under color of official right,'" Manzo and his brother "were not acting 'under color of official right,' as defined in the Hobbs Act," *id.* at 65.

With the dismissal of the Hobbs Act charges, the case was remanded to the District Court. In the meantime, the grand jury returned a second superseding indictment charging Manzo with two counts of Travel Act violations, and one count of misprision of a felony, in violation of 18 U.S.C. § 4.[1] On February 17, 2012, however, the District Court reversed its earlier position and held that the receipt of something of value by an unsuccessful candidate for public office in exchange for a promise of future official conduct does not constitute bribery under the New Jersey bribery statute and therefore does not qualify as an "unlawful activity" under the Travel Act. The Court accordingly dismissed all remaining charges against Manzo.[2]

---

[1] That statute provides:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 4.

[2] The Court dismissed the misprision of a felony charge because, given its dismissal of the Hobbs Act and

5

After all of the charges against him had been dismissed, Manzo filed a *pro se* petition on March 14, 2012, seeking attorney fees pursuant to the Hyde Amendment, which, as earlier quoted, permits an award of fees and expenses to a party subjected to vexatious, frivolous, or bad faith prosecution.  Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997), *reprinted in* 18 U.S.C. § 3006A, Statutory Note.  The District Court denied that petition, holding that Manzo had not borne his burden of demonstrating that the prosecution in this case fits the criteria of the Hyde Amendment.  Manzo then filed this timely appeal of that order.

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.  We have not considered what standard of review applies to a district court's denial of a defendant's request for attorney fees under the Hyde Amendment, but all of the Courts of Appeals that have considered the issue have concluded that review is for abuse of discretion.  *See United States v. Lain*, 640 F.3d 1134, 1137 (10th Cir. 2011); *United States v. Beeks*, 266 F.3d 880, 883 (8th Cir. 2001); *United States v. Wade*, 255 F.3d 833, 839 (D.C. Cir. 2001); *United States v. True*, 250 F.3d 410, 421-22 (6th Cir. 2001); *United States v. Lindberg*, 220 F.3d 1120, 1124 (9th Cir. 2000); *In re 1997 Grand Jury*, 215 F.3d 430, 436 (4th Cir. 2000); *United States v. Truesdale*,

---

Travel Act charges, neither Manzo nor his brother had committed any "felony" that was "cognizable by a court of the United States."  18 U.S.C. § 4.

211 F.3d 898, 905-06 (5th Cir. 2000); *United States v. Gilbert*, 198 F.3d 1293, 1297-98 (11th Cir. 1999). We agree and will review the District Court's order under that standard.

## III. Discussion

Manzo contends that the District Court abused its discretion in denying him "a reasonable attorney's fee and other litigation expenses" for what he claims was a "vexatious, frivolous, or … bad faith" prosecution by the government. Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997). Although we have not interpreted the Hyde Amendment, many of our sister circuits have. According to those courts, the Hyde Amendment "places a daunting obstacle before defendants who seek to obtain attorney fees and costs from the government following a successful defense of criminal charges." *United v. Isaiah*, 434 F.3d 513, 519 (6th Cir. 2006) (internal quotation marks omitted). In particular, a "defendant must show that the government's position underlying the prosecution amounts to prosecutorial misconduct – a prosecution brought vexatiously, in bad faith, or so utterly without foundation in law or fact as to be frivolous." *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999). "The defendant bears the burden of meeting any one of the three grounds under the statute, and acquittal by itself does not suffice." *Isaiah*, 434 F.3d at 519; *see also United States v. Shaygan*, 652 F.3d 1297, 1311-12 (11th Cir. 2011) ("[T]he Hyde Amendment place[s] the burden" of showing that a prosecution is "vexatious, frivolous, or in bad faith" on "the defendant, not on the government" (internal quotation marks omitted)); *United States v. Capener*, 608 F.3d 392, 401 (9th Cir. 2010) (noting that "the burden is on the defendant" (internal quotation marks omitted)); *United*

7

*States v. Knott*, 256 F.3d 20, 28 (1st Cir. 2001) ("[T]he Hyde Amendment places the burden of proof on the defendant to demonstrate that the government's position was vexatious, frivolous, or in bad faith." (internal quotation marks omitted)).

That burden is made more difficult by the approach courts take in assessing the government's litigation position. In determining whether a position is vexatious, frivolous or in bad faith, courts "make only one finding, which should be based on the case as an inclusive whole. A count-by-count analysis is inconsistent with this approach." *United States v. Heavrin*, 330 F.3d 723, 730 (6th Cir. 2003) (citation and internal quotation marks omitted). In addition, when the legal issue is one of first impression, a court should be wary of awarding fees and costs so as not to "chill the ardor of prosecutors and prevent them from prosecuting with earnestness and vigor. The Hyde Amendment was not intended to do that." *Gilbert*, 198 F.3d at 1303.

With respect to the three grounds for relief under the statute, courts have held that a "vexatious" position is one that is "without reasonable or probable cause or excuse." *Id.* 1298-99 (internal quotation marks omitted); *see also United States v. Lain*, 640 F.3d 1134, 1137 (10th Cir. 2011) (same); *United States v. Monson*, 636 F.3d 435, 439 (8th Cir. 2011) (same). To establish that the government's prosecution was "vexatious," a petitioner must show "both … that the criminal case was objectively deficient, in that it lacked either legal merit or factual foundation, and … that the government's conduct, when viewed objectively, manifests maliciousness or an intent to harass or annoy." *Knott*, 256 F.3d at 29.

8

Courts have interpreted a "frivolous" action as one that is "groundless[,] with little prospect of success." *Gilbert*, 198 F.3d at 1299 (alteration and internal quotation marks omitted); *see also Heavrin*, 330 F.3d at 728 (adopting the *Gilbert* court's definition of "frivolous"); *United States v. Braunstein*, 281 F.3d 982, 995 (9th Cir. 2002) (same); *In re 1997 Grand Jury*, 215 F.3d 430, 436 (4th Cir. 2000) (same). "[A] case is frivolous when the government's position was foreclosed by binding precedent or [is] obviously wrong … ." *Capener*, 608 F.3d at 401 (first alteration in original) (internal quotation marks omitted). "Just because the government lacks 'precedent' does not automatically mean that its position is frivolous." *Heavrin*, 330 F.3d at 729. "The government should be allowed to base a prosecution on a novel argument, so long as it is a reasonable one, without fear that it might be setting itself up for liability under the Hyde Amendment." *Id.* Thus, "[a] frivolous position is one lacking a reasonable legal basis or where the government lacks a reasonable expectation of attaining sufficient material evidence by the time of trial." *Id.* A "frivolous" position can be distinguished from a "vexatious" one in that "the term 'vexatious' embraces the distinct concept of being brought for the purpose of irritating, annoying, or tormenting the opposing party." *Id.*

Finally, "bad faith" means "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; … it contemplates a state of mind affirmatively operating with furtive design or ill will." *Gilbert*, 198 F.3d at 1299 (omission in original) (internal quotation marks omitted); *cf. Franks v. Delaware*, 438 U.S. 154, 171 (1978) (defining bad faith in the law enforcement context to include "reckless

9

disregard for the truth"). Courts engage in an objective inquiry when determining whether a prosecution was pursued in "bad faith." *See Shaygan*, 652 F.3d at 1313-14.

Against that legal background, we examine each of Manzo's arguments.

> A.    *Continued Prosecution After Dismissal of Hobbs Act Charges*

Manzo contends that his prosecution was either vexatious or frivolous because, even after we affirmed the District Court's dismissal of the Hobbs Act charges, the government continued to pursue him on the remaining Travel Act and misprision of a felony charges. Manzo insists that, by nonetheless proceeding with its prosecution, the government "was nothing less th[a]n defiant, and the second superseding indictment no longer supported a position of first impression." (Manzo's Opening Br. at 19.)

That charge fails to establish an abuse of discretion. The District Court dismissed the Hobbs Act charges because, during the time of the alleged conduct, Manzo was only a candidate for public office and therefore did not act "'under color of official right.'" (Order on Motion in Limine at 24 (D.N.J. May 18, 2010), ECF No. 33 (quoting 18 U.S.C. § 1951(a)).) At the same time, however, the Court declined to dismiss the Travel Act charges and expressly rejected Manzo's argument that, because he was "merely a candidate and not one that was at least elected," his conduct did not fall within New Jersey's bribery statute. (Supplemental App. at 166.) The Court opined that, under a "plain reading," the bribery statute "encompasses prosecutions where the person

whom the action was sought to influence was not yet qualified or [able] to act in a desired way for any reason." (Supplemental App. at 166.)  As noted earlier, we affirmed on interlocutory appeal the dismissal of the Hobbs Act charges. It was only then that, upon reconsideration, the District Court dismissed the Travel Act charges because it concluded that New Jersey's bribery statute does not criminalize bribes to candidates for public office (as opposed to officeholders).

Given the District Court's original ruling on the applicability of the New Jersey bribery statute, the government's continued prosecution of Manzo under the remaining Travel Act charges was clearly not vexatious, since it was not "objectively deficient." *Knott*, 256 F.3d at 29.  Nor was it frivolous.  "Once a district court judge accepts the government's legal position it will be extremely difficult to persuade us that the issue was not debatable among reasonable lawyers and jurists, i.e., that it was frivolous." *Gilbert*, 198 F.3d at 1304.  In fact, the District Court's original ruling on the applicability of the New Jersey bribery statute left the government with an objectively reasonable belief that its legal position would prevail.  We accordingly reject Manzo's argument that the government's continued prosecution was vexatious or frivolous.

B.    *Manzo's Claim that the Government Knew that Its Factual Allegations Were False*

Manzo also argues that the allegations in the indictment were "blatantly false," that the government knew they were false, and that the government's prosecution was therefore in bad faith, as well as being vexatious and frivolous. (Manzo's Opening Br. at 6.)  Those assertions rely primarily on the fact that, when he testified in a separate corruption trial, Ronald Manzo said he never physically gave his brother $10,000 in cash that he had received from Dwek.

That testimony does not conclusively prove that the government's accusations were false, much less that they were knowingly false.  Nor does the testimony prove that the District Court abused its discretion.  As the Court noted, despite Ronald's testimony, the government was prepared to present recordings "during which both Ronald Manzo and [Louis Manzo] acknowledged that [Louis Manzo] had received money from Mr. Dwek."  (Supplemental App. at 14.)  In addition, even if Ronald's testimony were true, the charges against Manzo did not require the government to prove that he physically received a cash bribe, only that he traveled in interstate commerce with the intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of" a bribe, 18 U.S.C. § 1952(a)(3), which, under New Jersey law, encompasses the "indirect[]" acceptance of "[a]ny benefit as consideration for a decision, opinion, recommendation, vote or exercise of discretion of a public servant," N.J. Stat. Ann. § 2C:27-2.    The   recordings   would   have   allowed   the

12

government to plausibly argue that Manzo was aware of the cash payment to his brother and played a role in facilitating it. Thus, Ronald's testimony that Manzo never received the cash payments, even if we assume it to be true, is insufficient to show that the government's prosecution in light of that testimony was vexatious, frivolous, or in bad faith.

C.    *Conflicts of Interest*

Manzo avers that the prosecutors in his case operated under "overbearing conflicts of interest" and should have recused themselves under "numerous" Department of Justice guidelines. (Manzo's Opening Br. at 14.) Specifically, he asserts that, while running for governor of New Jersey, then-United States Attorney Chris Christie lauded his office's anti-corruption prosecutions and publicly proclaimed that, as Governor, he would hire several Assistant United States Attorneys who had played a role in prosecuting over 40 individuals for corruption in Hudson County, New Jersey, including Manzo. According to Manzo, shortly after candidate Christie made that statement, a number of prosecutors donated to Christie's campaign. Despite those donations and Christie's public statement that he would hire them, the prosecutors, according to Manzo, "failed to recuse themselves from an investigation and prosecution that ultimately benefitted Christie's election, and by so doing, enhanced their employment prospects for the jobs that they were promised." (Manzo's Opening Br. at 14.) Manzo insists that the prosecutors' supposed failure to adhere to recusal guidelines constitutes "bad faith."

The government vigorously denies that any of the prosecutors violated recusal guidelines, which may well be

13

correct, but we need not address the issue. As already noted, "Congress created an objective standard of bad faith to govern an award of attorney's fees and costs under the Hyde Amendment." *Shaygan*, 652 F.3d at 1313. We accordingly should not "read the Hyde Amendment to license judicial second-guessing of prosecutions that are objectively reasonable." *Id.* at 1314. Thus, rather than attempting to delve into the minds and motivations of individual prosecutors when making political contributions or career moves, the proper inquiry into a challenged prosecution is an objective one. Here, in a wide-ranging undercover investigation, the FBI obtained recorded conversations in which Manzo, a candidate for political office, agreed to accept money in exchange for a promise of future official action if elected. Under those circumstances, it was not objectively unreasonable for the government to attempt to prosecute him under the Hobbs Act and the Travel Act. At the time of the indictment, there was no binding case law holding that such prosecutions were improper, and it was entirely legitimate for the government to initiate a federal prosecution based on the underlying facts. The District Court therefore did not abuse its discretion in rejecting Manzo's conflict-of-interest argument.

D. *Manzo's Remaining Allegations of Prosecutorial Misconduct*

Manzo's remaining miscellaneous allegations of bad faith are also unavailing. He claims that the government failed to present exculpatory evidence to the grand jury and failed to preserve the instructions given to Dwek by the FBI prior to his covert meetings with the Manzos. The District Court rejected those claims, holding that Manzo had not

14

borne his burden of proof on them. But even if he had, those failures would at most constitute prosecutorial errors, rather than a basis to conclude that the prosecution was undertaken and pursued in bad faith. "Sloppy work alone does not support a claim of vexatiousness, frivolousness, or bad faith" sufficient to justify attorney fees under the Hyde Amendment. *Lain*, 640 F.3d at 1139. Moreover, as the District Court noted, the second superseding indictment against Manzo was dismissed prior to trial, and the Jencks Act requires production of documents relied on by a government witness only "[a]fter [the] witness called by the United States has testified on direct examination" at trial. 18 U.S.C. § 3500(b).

Manzo also argues that Dwek was not authorized under Department of Justice guidelines to engage in undercover activities with Manzo because Manzo was not yet a public official. Whether that is correct is irrelevant, for, even assuming that the government mishandled Dwek in some respects, the alleged errors would not demonstrate that the government's prosecution of Manzo was vexatious, frivolous, or in bad faith, which is the standard that Manzo must meet for an award of attorney fees. We find no abuse of discretion in the District Court's decision.

## IV. Conclusion

For the foregoing reasons, we will affirm the order of the District Court.