In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-3340

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JOHN D. TERZAKIS,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 339 — **Rebecca R. Pallmeyer**, *Judge*.

ARGUED APRIL 5, 2017 — DECIDED APRIL 27, 2017

Before WOOD, *Chief Judge*, and FLAUM and HAMILTON, *Circuit Judges*.

FLAUM, *Circuit Judge*. John D. Terzakis was indicted for transporting stolen goods. After the government conceded that its key witness would be unavailable to testify at trial, it moved to dismiss the case. Terzakis then filed a motion under the Hyde Amendment seeking attorney's fees, which the district court denied. For the following reasons, we affirm.

## I. Background

In the early 1990s, Terzakis met Berenice Ventrella, the trustee for a family trust with extensive real-estate holdings. Terzakis ran a company that managed and developed real estate and eventually managed some of Berenice's property. In March 2007, Berenice and Terzakis created an LLC to hold one of Berenice's properties in Buffalo Grove, Illinois. The LLC purchased the property from Berenice using a $15 million loan.

Shortly before her death in January 2008, Berenice appointed her son Nick, who had Asperger syndrome, to be the successor trustee of the Ventrella trust. Soon after Berenice passed away, Terzakis opened an account in the name of the "Estate of Berenice Ventrella." Terzakis allegedly took Nick to various banks and had him transfer funds from accounts that had belonged to Berenice into this new estate account. Subsequently, between March and September 2008, Terzakis transferred about $4.2 million from the estate account to the account for the LLC he had opened with Berenice and which he now controlled. Terzakis then transferred at least $3.9 million from the LLC account to different personal accounts of his that were unrelated to the Ventrella family. He later proffered that this money was a loan from Berenice's estate for "working capital"; however, the Buffalo Grove property held by the LLC was never developed, and there are no documents memorializing a loan from Berenice's estate to Terzakis.

Thereafter, the government investigated these transfers. Law enforcement officers reviewed Terzakis's ledgers detailing some of the above transactions and other records from various banks and members of the Ventrella family. However,

Nick was the only witness with personal knowledge of Terzakis's allegedly fraudulent statements about the purpose of the transfers.

During the investigation, Nick's relatives disclosed to the government an August 2009 psychological report authored by Dr. Karen F. Levin regarding Nick. It noted that Nick "had a very poor grasp of time," that he "had difficulty with simple questions about the present," and that he showed "a lack of organized thought." The report also remarked on Nick's "excellent recall of very old events with fine details of numbers," and that "[h]e was very good with calculations." Dr. Levin ultimately opined that Nick "clearly has a longstanding cognitive disability that would likely fall upon the autism spectrum," and needed assistance managing his finances and other aspects of life. Between 2010 and 2013, the government held several interviews with Nick and questioned him about the bank transfers. Nick told the government that Terzakis had expressed to Nick that the transfers were for developing the Buffalo Grove property held by Terzakis's LLC.

In April 2013, the government brought the case before a grand jury. Nick did not testify at the proceeding; however, the indictment indicates that the government informed the grand jury that Nick had cognitive problems. On April 25, 2013, several days before the limitations period was to lapse for four of the underlying transfers, the grand jury returned a five-count indictment for transmitting stolen money, in violation of 18 U.S.C. § 2314. The case proceeded without resolution for two years. Then, in October 2015, the government learned that Nick had been diagnosed with brain cancer, with a prognosis of six months. The government informed Terzakis of the diagnosis, and the parties resumed plea negotiations.

On December 23, 2015, Terzakis rejected the government's plea offer and demanded a speedy trial. On January 8, 2016, the government moved to dismiss the case, citing Nick's unavailability, and the court entered a dismissal order later that day. Nick passed away several months later.

On February 5, 2016, Terzakis moved to recover attorney fees under the Hyde Amendment, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (*reprinted in* 18 U.S.C. § 3006A, historical and statutory notes). On August 19, the district court denied Terzakis' motion. This appeal followed.

## II. Discussion

This Court has not explicitly stated the standard of review for appeals of Hyde Amendment cases. All other circuits to address the question have reviewed the district courts' decisions for abuses of discretion. *See United States v. Manzo*, 712 F.3d 805, 809 (3d Cir. 2013) (collecting cases). We agree and review the district court's decision on Terzakis's motion for attorney's fees for abuse of discretion. A district court abuses its discretion by applying an incorrect legal standard, or by reaching an outcome that is unsupported by the record or based on a clearly erroneous finding of fact. *United States v. Warner*, 498 F.3d 666, 680 (7th Cir. 2007).

The Hyde Amendment "authorizes the court in a criminal case to award a reasonable attorney's fee to 'a prevailing party, other than the United States,' if the court finds that the government's position was 'vexatious, frivolous, or in bad faith.'" *United States v. Sriram*, 482 F.3d 956, 958–59 (7th Cir. 2007) (quoting 18 U.S.C. § 3006A), *vacated on other grounds*, 552 U.S. 1163 (2008). The defendant in the underlying criminal case bears the burden of demonstrating these requirements by

a preponderance of the evidence. *See United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1182 (9th Cir.), *opinion amended on denial of reh'g*, 326 F.3d 1028 (9th Cir. 2003); *United States v. Truesdale*, 211 F.3d 898, 908 (5th Cir. 2000).

### A. Prevailing Party

The district court determined that Terzakis was a "prevailing party" because the government had dismissed the indictment after the limitations period had lapsed. The government argues that the district court erred in making this ruling. We may review the government's arguments as alternate grounds for affirmance, because concluding that Terzakis was not a prevailing party would produce the same outcome as the district court's order. *See Jennings v. Stephens*, — U.S. —, 135 S. Ct. 793, 798 (2015) ("An appellee who does not take a cross-appeal may 'urge in support of a decree any matter appearing before the record, although his argument may involve an attack upon the reasoning of the lower court.'" (quoting *United States v. Am. Ry. Exp. Co.*, 265 U.S. 425, 435 (1924))).

The Hyde Amendment does not define the term "prevailing party." In civil fee-shifting contexts, however, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) ("A 'prevailing party' is one who has been awarded some relief by a court.") (citation omitted). This principle does not map neatly onto the criminal context, where the Hyde Amendment limits the reach of the term "prevailing party" to defendants. The prin-

ciple is clear enough as applied to some dispositions: A conviction is sufficient to disqualify a defendant as a prevailing party—even when the sentence was lighter than what the government sought, *see Sriram*, 482 F.3d at 959—while an acquittal following a trial would clearly make a defendant a prevailing party. However, the prevailing-party analysis is not as clear-cut for dispositions either that do not afford full relief on the merits or that result in a conviction.

In this case, the government moved to voluntarily dismiss the indictment against Terzakis well after the statute of limitations had run. The government does not dispute that it was precluded from pursuing these charges in the future under the applicable statute of limitations, but argues that Terzakis did not prevail because the dismissal was not "relevant to [his] guilt or innocence." *United States v. Chapman*, 524 F.3d 1073, 1089 (9th Cir. 2008). This may be true, but, like a dismissal with prejudice—which satisfies the prevailing-party requirement because it "materially alters the legal relationship of the parties, as it precludes the government from bringing a prosecution that it otherwise would be entitled to bring," *id.*— the dismissal here materially altered the relationship between the government and Terzakis: The government could no longer prosecute Terzakis for the allegedly fraudulent transfers. Thus, the district court did not err in determining that Terzakis was the prevailing party in this case.[1]

---

[1] The district court addressed the prevailing-party issue first, reasoning that "[w]hether a party is 'prevailing' for purposes of the Hyde Amendment is a threshold question." *United States v. Terzakis*, No. 13 CR 339, 2016 WL 4417022, at *4 (N.D. Ill. Aug. 19, 2016) (citing *Sriram*, 482 F.3d at 959 ("[E]ven if the government's position is vexatious, etc., the defendant cannot be awarded fees unless he is the prevailing party.")). However,

### B. Vexatious, Frivolous, and Bad Faith

The district court concluded that Terzakis had not met his burden of showing that the government's case was vexatious, frivolous, or taken in bad faith, as required for fee-shifting under the Hyde Amendment. Terzakis first argues that the district court abused its discretion by applying incorrect legal standards. Specifically, he argues that the district court conflated the terms "vexatious" and "frivolous" when it reasoned that Terzakis's claim failed "under any definition of these terms [because] Terzakis must at least show that the government's actions were baseless." However, the district court correctly noted that: (1) this Court has not yet defined the operative terms; (2) there is clear tension among and overlap in the definitions employed by other circuits; and (3) vexatiousness and frivolousness both seem to require some level of objective deficiency in the government's position.[2] Indeed, other cir-

---

we do not read *Sriram* as requiring analysis of the prevailing-party question as a threshold matter. Rather, we understand the Hyde Amendment requirements as two independent and necessary elements, akin to the two prongs of the *Strickland* test for ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687, 697 (1984). We thus leave the order in which the district courts choose to address the elements to their discretion. *Cf. McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017) ("there is no reason for a court ... to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one" (quoting *Strickland*, 466 U.S. at 697)) (internal quotation marks omitted).

[2] Terzakis argues that the district court's reasoning was incorrect because, according to him, "a position may be objectively deficient and vexatious without also being entirely baseless." However, the district court did not require Terzakis to show that the government's position was *entirely* baseless; rather, it held that Terzakis was unable to demonstrate that

cuits' definitions of frivolousness and vexatiousness incorporate such an objective element. *See United States v. Knott*, 256 F.3d 20, 29 (1st Cir. 2001) (vexatiousness requires that "the criminal case was objectively deficient, in that it lacked either legal merit or factual foundation, and … that the government's conduct, when viewed objectively, manifests maliciousness or an intent to harass or annoy"); *United States v. Sherburne*, 249 F.3d 1121, 1126–27 (9th Cir. 2001) (vexatiousness requires a showing of both objective deficiency and a subjective intent to harass); *Manzo*, 712 F.3d at 811 ("[a] frivolous position is one lacking a reasonable legal basis or where the government lacks a reasonable expectation of attaining sufficient material evidence by the time of trial") (citation omitted); *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) ("A 'frivolous action' is one that is '[g]roundless … with little prospect of success; often brought to embarrass or annoy the defendant.'" (quoting BLACK'S LAW DICTIONARY 668 (6th ed. 1990))). We conclude that, for purposes of the Hyde Amendment, the terms "vexatious" and "frivolous" both require a prevailing party to demonstrate that the government's position was objectively deficient—in other words, that the government lacked a sufficient factual or legal basis on which to initiate or proceed with the case.[3]

---

the government's position was sufficiently objectively deficient to be either vexatious or frivolous.

[3] Terzakis argues that requiring a showing of objective deficiency for both terms would violate the principle of statutory construction directing courts "to give effect, if possible, to every clause and word of a statute," *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations omitted), because it would render the term "vexatious" mere surplusage, *see Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 698 (1995) (noting

courts' "reluctance to treat statutory terms as surplusage") (citation omitted). Specifically, Terzakis says that if frivolousness requires a showing of objective deficiency only, and vexatiousness requires a showing of objective deficiency *plus* an intent to harass, then it is hard, if not impossible, to imagine a scenario where the government's position is vexatious but not frivolous.

The Third and Sixth Circuits' suggested distinction does not fully resolve this surplusage issue. Those courts reasoned that "[a] 'frivolous' position can be distinguished from a 'vexatious' one in that 'the term "vexatious" embraces the distinct concept of being brought for the purpose of irritating, annoying, or tormenting the opposing party.'" *Manzo*, 712 F.3d at 811 (quoting *United States v. Heavrin*, 330 F.3d 723, 729 (6th Cir. 2003)). Such a distinction simply adds an additional requirement—showing a subjective intent to harass—to the objective deficiency requirement for showing frivolousness. This formulation would make all vexatious positions frivolous ones. Alternatively, interpreting these cases to suggest that vexatiousness requires showing only the government's subjective intent to harass, regardless of the objective strength of the government's position, would potentially render the definition of vexatious redundant with the term "bad faith," replicating the surplusage problem in a different part of the same clause of the Hyde Amendment. *See Gilbert*, 198 F.3d at 1299 (bad faith "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; … it contemplates a state of mind affirmatively operating with furtive design or ill will" (quoting BLACK'S LAW DICTIONARY 139 (6th ed. 1990))).

The principle of attempting to give effect to each statutory term has limits, however. *Duncan* notes that statutes should be construed this way "if possible," 533 U.S. at 174; and *Babbitt* speaks of "reluctance," rather than an absolute bar, 515 U.S. at 698. In the Hyde Amendment, the terms vexatious, frivolous, and bad faith are all closely related and require some combination of objective deficiency and subjective bad intent. It may not be possible to create three distinct terms with independent meanings from the combination of only these two elements. However, we need not resolve such issues today, because Terzakis has not shown that the government's case was objectively deficient, or that it was brought to harass Terzakis.

The essence of Terzakis's argument is that the government's case was impermissibly weak because it depended on the testimony of Nick Ventrella, who the government knew to have Asperger syndrome and who was later diagnosed with terminal brain cancer. First, Terzakis notes that the government did not call Nick to testify before the grand jury. He argues that this is evidence that the government knew it would not call Nick to testify at trial, and that therefore the government's case was deficient. On the contrary, this suggests that the government had a sufficiently strong case without Nick's testimony to convince a grand jury that there was probable cause to indict Terzakis, based on the documentary evidence of the allegedly fraudulent transactions that the government could have presented before the grand jury or at trial.

Next, Terzakis cites to Dr. Levin's 2009 medical report suggesting that Nick had cognition issues before and throughout the government's investigation. He speculates that Nick's mental health "very likely" deteriorated between the time the report was issued and the 2013 indictment. Terzakis concludes that as a result of Nick's mental condition, Nick was effectively unavailable to testify at trial. However, as the district court correctly noted, simply having Asperger syndrome does not disqualify a witness from testifying. *See* Fed. R. Evid. 601 ("Every person is competent to be a witness unless these rules provide otherwise."). As with any other witness, Terzakis would have had the opportunity to cross-examine Nick regarding his cognitive abilities and recollection of the relevant events. Susceptibility to cross-examination is not a basis on which to conclude that such a witness must be incredible, much less effectively unavailable.

Finally, Terzakis argues that, even if Nick would have been available to testify prior to his October 2015 brain-cancer diagnosis, he must have been unavailable at least from that point until the December 2015 dismissal. Terzakis claims that such unavailability supports a bad-faith prosecution argument. There are several problems with this line of argument: First, Terzakis did not make this narrower argument until his reply brief, so it is waived. *Darif v. Holder*, 739 F.3d 329, 336–37 (7th Cir. 2014) (citations omitted). Second, the main document Terzakis uses to support this argument, a report written by Dr. Norman V. Kohn, was not presented to the district court prior to Terzakis' reply brief in support of his motion for attorney's fees, and so the court was not required to address it. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("the district court is entitled to find that an argument raised for the first time in a reply brief is forfeited"). In any event, Dr. Kohn never met Nick, and so was unable to assert based on personal or direct knowledge that Nick was unable to testify at any particular point in time; rather the report extrapolates from the effects of brain cancer on cognition generally.[4] Third, the government informed Terzakis of Nick's cancer diagnosis immediately after learning of it, so Terzakis was apprised of this relevant information before resuming plea negotiations. Fourth, as with his other arguments above, Terzakis does not provide any authority that a witness with brain cancer must

---

[4] The report states, "Mr. Ventrella died of brain cancer in 2016. Well before causing death, malignant brain cancer destroys portions of the brain and causes increased pressure on the entire brain, almost always causing progressive loss of cognitive (mental) function." Dr. Kohn opined that as a result of Nick's Asperger syndrome and brain cancer, Nick "was continuously impaired, and unable to testify, from the time of Dr. Levin's [August 2009] examination ... until the time of his death in 2016."

be considered unavailable as of the date of the diagnosis or any particular time thereafter. In short, Terzakis has not shown that the government's decision to drop the charges against Terzakis was anything but an exercise of prosecutorial discretion in the face of challenges to securing a conviction at trial.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.