PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

FRANCISCO MENDOZA,

      Defendant–Appellant.

No. 10-4165

Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:08-CR-00805-DB-1)

Jill M. Wichlens, Assistant Federal Public Defender (Raymond P. Moore, Federal Public
Defender, with her on the briefs), Office of the Federal Public Defender, Denver,
Colorado, for the Defendant-Appellant.

Elizabethanne C. Stevens, Assistant United States Attorney, (Carlie Christensen, United
States Attorney, with her on the brief), Office of the United States Attorney, Salt Lake
City, Utah, for the Plaintiff-Appellee.

Before **LUCERO**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

**LUCERO**, Circuit Judge.

We must determine whether a judgment has been "entered on the criminal docket" for purposes of Fed. R. App. P. 4(b)(6) if it is noted only on an internal district court document that is not publicly accessible. Following sentencing of Francisco Mendoza, the district court filed a sealed judgment on a document labeled "Criminal Docket . . . Internal Use Only." The criminal docket available to the public contains no indication that judgment was ever entered. We conclude that this procedure does not satisfy Rule 4(b)(6). Dockets and docket sheets have traditionally been considered public documents. Consistent with a centuries-long history of public access to dockets, we hold that the phrase "entered on the criminal docket" contemplates public notation that judgment has been entered. Entry on a list of filings maintained for internal court use and inaccessible to the public does not qualify under the ordinary meaning of Rule 4(b)(6). Because judgment was never entered on Mendoza's criminal docket, we must reject the government's contention that his appeal was untimely. Nevertheless, we deny Mendoza's substantive claim on the merits. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

Mendoza pled guilty to conspiring to distribute methamphetamine in violation of 21 U.S.C. § 846. In return, the government agreed to recommend that Mendoza be sentenced at the low end of his Guidelines range. At the request of a co-defendant, the court sealed Mendoza's multi-defendant sentencing proceeding. During these proceedings, the court calculated Mendoza's Guidelines range to be 135 to 168 months.

Mendoza's counsel reminded the court that the prosecutor had agreed to recommend a sentence at the low end of this range, but when given an opportunity to speak, the prosecutor did not do so. Instead, he emphasized that Mendoza was a "highest level" drug dealer, possessed firearms, and had been distributing drugs for twenty years.

Despite these statements, the court sentenced Mendoza to 135 months' imprisonment, at the bottom of his Guidelines range. Characterizing the selected sentence as "lenient," the court explained: "I have been on this bench for over fifteen years and I have meted out much longer sentences in drug cases for people with much less involvement in the drug trade by way of admissible evidence . . . . This is a bargain, relatively speaking."

On September 3, 2009, the district court filed a sealed judgment. This filing was not noted or reflected in any way on the docket sheet available to the public. The only evidence in the record that judgment was entered is a supplemental appendix filed by the government which contains a "Criminal Docket" titled "Internal Use Only." The docket originally transmitted to us from the district court, labeled simply "Criminal Docket," contains no entries between August 24, 2009 and October 26, 2009, when forfeiture proceedings were initiated.

In March 2010, Mendoza filed a pro se request for his docket sheet. The court responded in June. On September 13, 2010, Mendoza filed a pro se notice of appeal in this court. In that filing, Mendoza complains that he was forced to request a docket sheet from the district court after he unsuccessfully attempted to contact his attorney and

noticed "no activity . . . after his sentencing" on the publicly accessible docket.

## II

The government filed a motion to dismiss this appeal, arguing that Mendoza's notice of appeal was untimely. A defendant choosing to appeal a criminal case must file a notice of appeal within fourteen days after "the entry of either the judgment or the order being appealed." Fed. R. App. P. 4(b)(1)(A)(i). Although this time limit is not jurisdictional, Rule 4(b) is an "inflexible claim processing rule[]," which requires us to grant "relief to a party properly raising" its deadline. United States v. Garduno, 506 F.3d 1287, 1291 (10th Cir. 2007) (quotation omitted).

Mendoza filed his notice of appeal more than a year after he was sentenced. Under Rule 4(b), however, the deadline to appeal begins to run not at sentencing but upon entry of judgment. Fed. R. App. P. 4(b)(1)(A)(i). The Rule further provides that "[a] judgment or order is entered for purposes of this Rule 4(b) when it is entered on the criminal docket." Fed. R. App. P. 4(b)(6). The government argues that judgment was "entered on the criminal docket" on September 3, 2009, when the court filed a sealed judgment and noted this filing on a document titled "Criminal Docket . . . Internal Use Only." Mendoza contends that judgment was never entered under Rule 4(b) because the publicly available docket sheet contains no indication that a judgment has issued.

Whether Mendoza's appeal was timely thus turns on the proper interpretation of Rule 4(b)(6)—a legal issue that we address de novo. See United States v. Roman-Zarate, 115 F.3d 778, 781 (10th Cir. 1997). The federal rules do not define the phrase "entered

-4-

on the criminal docket." We accordingly look to the ordinary meaning of those words, including dictionary definitions. See United States v. Lain, 640 F.3d 1134, 1137 (10th Cir. 2011). A docket is a formal register kept by a court in which proceedings and filings are recorded. See IV Oxford English Dictionary 912 (J.A. Simpson & E.S.C. Weiner, eds., 2d ed. 1989) (defining "docket" as "[a] memorandum or register of legal judgments"); Webster's Third New International Dictionary 665 (1993) (defining "docket" as "a book of original entries kept by the clerk of a court or quasi-judicial body"). Although contemporary dictionary definitions do not expressly require that a docket be publicly accessible, numerous sources indicate that "docket," as that term is ordinarily used, refers to a public document.

Although the parties do not cite any case law addressing the precise issue before us—which itself suggests that judgment is entered in a public fashion in the vast majority of cases—our independent research has uncovered a single unpublished case on point. In United States v. Osborne, 452 F. App'x 294 (4th Cir. 2011) (unpublished), the court considered whether a 28 U.S.C. § 2255 petition had been timely filed, which turned on the date the petitioner's conviction became final. The judgment of conviction did not appear on the publicly accessible district court docket. Id. at 295-96. After the court of appeals noted the issue, the district court "modified its criminal docket sheet 'to remove court only status' as to entry of the criminal judgment." Id. at 295. The Fourth Circuit decided that entry on a "court only" docket did not start the Rule 4(b) clock. Noting that "the keeping of a docket fulfills a public record-keeping function over and above the

-5-

giving of notice to a party; and the right of public access in a criminal case extends to documents," the court concluded that judgment was not entered on the criminal docket until the court modified the entry so that it was accessible to the public. Id. at 296.

Perhaps the strongest support from our circuit for Mendoza's position can be found in Faragalla v. Access Receivable Management (In re Faragalla), 422 F.3d 1208 (10th Cir. 2005). In that case, we were tasked with interpreting several of the Federal Rules of Bankruptcy Procedure that establish a deadline for filing certain bankruptcy appeals. That deadline is measured from the "entry of a judgment or order in a docket." Id. at 1210 (quoting Fed. R. Bankr. P. 5003(a)). Interpreting this language, we held that

> [t]he signing of the order or judgment by the judge does not constitute an "entry" by the judge. The entry occurs when it is noted on the docket and thereby becomes public. A document is entered when the clerk makes the notation on the official public record, the docket, of the activity or submission of the particular document.

Faragalla, 422 F.3d at 1210 (quotation and ellipses omitted).

As the foregoing quote demonstrates, one would normally assume that the docket refers to an "official public record" rather than an internal court document. Id. (emphasis added). The Supreme Court has also operated under this assumption. In Bankers Trust Co. v. Mallis, 435 U.S. 381 (1978), the Court noted that "the keeping of a civil docket pursuant to Rule 79 fulfills a public recordkeeping function over and above the giving of notice to the losing party that a final decision has been entered against it." Id. at 384 n.4.

This supposition that dockets are public records has a long pedigree. As the Second Circuit noted in concluding that the public has a qualified First Amendment right

-6-

of access to docket sheets, our "national heritage" suggests that dockets are open to public inspection: "Since the first years of the Republic, state statutes have mandated that clerks maintain records of judicial proceedings in the form of docket books, which were presumed open either by common law or in accordance with particular legislation." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 94 (2d Cir. 2004); see also id. at 95 (collecting cases from numerous jurisdictions holding that dockets are open to public inspection). The same was true of English common law. One of the early uses of "docket" or "dogget" noted in the Oxford English Dictionary is an 1809 legal dictionary which explains that judgments are "entered on the docket of that term; so that upon any occasion you may soon find out a judgment, by searching these dockets, if you know the attorney's name." IV Oxford English Dictionary at 912 (quoting Sir Thomas E. Tomlins, The Law Dictionary (2d ed. 1809)). "History therefore demonstrates that docket sheets and their equivalents were, in general, expected to remain open for public viewing and copying." Hartford Courant Co., 380 F.3d at 95; see also Meliah Thomas, Comment, The First Amendment Right of Access to Docket Sheets, 94 Cal. L. Rev. 1537, 1542 (2006) ("Historically, dockets and docket sheets have been open for public inspection.").

We have no reason to doubt the continued validity of that expectation. In a variety of contexts, recent federal court cases have noted that dockets are generally public documents. See Nunez v. Pachman, 578 F.3d 228, 230 (3d Cir. 2009) (noting that a New Jersey statute requires "expungement of a criminal record from all public documents, including police blotters and court dockets"); Mangiafico v. Blumenthal, 471 F.3d 391,

398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); United States v. Ochoa-Vasquez, 428 F.3d 1015, 1029 n.5 (11th Cir. 2005) ("As a publication, the docket sheet provides the public and press with notice of case developments."); United States v. Alcantara, 396 F.3d 189, 200 (2d Cir. 2005) ("Entries on the docket should be made promptly . . . . We think this type of general public notice suffices to afford an adequate opportunity for challenge . . . .").

We acknowledge that a few cases have referenced a "sealed docket." See, e.g., In re Sealed Case (Bowles), 624 F.3d 482, 488 (D.C. Cir. 2009) (noting that in a "unique" sealed case, the "ad hoc procedure for notice described in the sealed docket . . . proved inadequate"); United States v. Valenti, 987 F.2d 708, 715 (11th Cir. 1993) (holding that a district court's "maintenance of a public and a sealed docket is inconsistent with affording the various interests of the public and the press meaningful access to criminal proceedings"). The term "sealed docket" is not contradictory or nonsensical, but the clear weight of authority indicates that a docket is normally a public filing.

Further, interpreting the phrase "entered on the criminal docket" to require entry of judgment in a public fashion comports with the purpose of the rule. In 1966, prior to the adoption of Rule 4(b), Fed. R. Crim. P. 37(a)(2) was amended to provide that a judgment is entered for purposes of starting the appeal deadline when it is "entered in the criminal docket." Advisory Committee Note to 1966 Amendments, reprinted in 39 F.R.D. 69, 200 (1966). The 1966 Committee Notes explain that the amendment was

-8-

necessary to "fix the precise time at which a judgment is entered." Id. A publicly available entry ensures this purpose will be satisfied. In contrast, defining "entered on the criminal docket" as including entries visible only to court staff sows confusion as to the precise date from which an appellate deadline runs. This case provides such an example. Mendoza's appellate counsel indicated in the docketing statement filed with this court that, "[a]ccording to the docket sheet, Mr. Mendoza still has not yet been sentenced. No explanation for this is apparent from the docket sheet." The government cited this confusion as "good cause" for its late filing of a motion to dismiss.[1]

We also note that interpreting Rule 4(b) to require entry of judgment in a publicly accessible fashion fits within the overall scheme of the federal rules. Under Fed. R. Crim. P. 49(c), the clerk is required to provide notice of court orders to the parties, but "the clerk's failure to give notice does not affect the time to appeal, or relieve—or authorize the court to relieve—a party's failure to appeal within the allowed time." Id. The potential for this rule to work injustice is mitigated if judgment must be entered on a publicly accessible docket because an attentive defendant can always determine when his

---

[1] We need not decide whether good cause excused the government's late filing of its motion to dismiss. Although Tenth Circuit Rule 27.2 states that a motion to dismiss an appeal "should be filed within 14 days after the notice of appeal is filed, unless good cause is shown," 10th Cir. R. 27.2(A)(3)(a), an untimely motion does not result in forfeiture if the government raises the issue in its merits brief. See United States v. Clayton, 416 F.3d 1236, 1239 (10th Cir. 2005); see also United States v. Mitchell, 518 F.3d 740, 750 (10th Cir. 2008) ("Because Rule 4(b) implicates important judicial interests beyond those of the parties, we hold that this court may raise its time bar sua sponte." (italicization omitted)).

appeal deadline begins by checking his docket sheet.  Under the government's interpretation of Rule 4(b), however, court personnel could effectively deny a defendant the right to an appeal by entering judgment in a secretive manner.

The parties have not raised before us constitutional arguments under the First Amendment or the Due Process Clause and it is not for us to look beyond the narrow dispute framed by the parties.  United States v. Yelloweagle, 643 F.3d 1275, 1284 (10th Cir. 2011).  Nevertheless, we note that the rule proposed by the government raises serious constitutional concerns.  An "essential principle of due process is that a deprivation of life, liberty or property be preceded by notice."  Riggins v. Goodman, 572 F.3d 1101, 1108 (10th Cir. 2009); see also United States v. Ready, 82 F.3d 551, 555 (2d Cir. 1996) ("Once a system of appellate courts is put into place . . . a criminal defendant's ability to appeal may not be unduly burdened.") (citing Griffin v. Illinois, 351 U.S. 12, 18-19 (1956)).  These concerns counsel against adopting the government's position.  See FCC v. Fox Television Stations, Inc., 556 U.S. 502, 516 (2009) ("[A]mbiguous statutory language [should] be construed to avoid serious constitutional doubts."); see also Phelps v. Hamilton, 59 F.3d 1058, 1070 (10th Cir. 1995) (noting the "well-established principle" that "statutes will be interpreted to avoid constitutional difficulties" (quotation omitted)).

Based on the forgoing authorities, we conclude that a judgment is not "entered on the criminal docket" for purposes of Fed. R. App. P. 4(b)(6) unless judgment is noted on the docket in a publicly accessible manner.  This does not mean that a court must provide access to the judgment itself, but the public docket must reflect the date judgment was

entered. See In re Application of Herald Co., 734 F.2d 93, 102 (2d Cir. 1984) ("The

motion itself may be filed under seal, when appropriate, by leave of court, but the

publicly maintained docket entries should reflect the fact that the motion was filed . . . .").

Because the criminal docket in Mendoza's case does not reflect the entry of final

judgment, we deny the government's motion to dismiss.[2] Mendoza's notice of appeal

was filed after the court announced its sentence but before the entry of judgment, and

thus his appeal is timely. See Fed. R. App. P. 4(b)(2).[3]

---

[2] The government notes that Mendoza received his criminal docket sheet in June 2010 after filing a pro se request. The record is unclear as to whether this transmittal indicated that a sealed judgment had been filed. In any event, our court has previously rejected the argument that "the date of entry" of a judgment or order "could be the date upon which it is received by a prisoner." Jenkins v. Burtzloff, 69 F.3d 460, 462 (10th Cir. 1995). "The absurdity of such a definition could be seen most clearly where a single order or judgment applies to several parties who are incarcerated. The date of entry for a single order could be different for each of the incarcerated parties." Id. We rejected a notice-based definition of entry because "[w]hen a court clerk is asked what the entry date is of an order or judgment it should not be necessary for the clerk to give a different answer depending on who asks the question." Id. Accordingly, notice to Mendoza cannot constitute entry on the criminal docket under established Tenth Circuit precedent.

[3] Although final judgment was never properly entered, we nevertheless have jurisdiction over this appeal. As long as "no question exists as to the finality of the district court's decision," defects in the proper entry of judgment do not affect our appellate jurisdiction. Burlington N. R.R. Co. v. Huddleston, 94 F.3d 1413, 1416 n.3 (10th Cir. 1996). There is clearly no question that the district court's imposition of a sentence was final. The Supreme Court has held that if "a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the court of appeals to dismiss the appeal." Bankers Trust Co. v. Mallis, 435 U.S. 381, 385 (1978). We have applied this rule in many civil cases. See, e.g., Deboard v. Sunshine Mining & Ref. Co., 208 F.3d 1228, 1237 (10th Cir. 2000); Kunkel v. Cont'l Cas. Co., 866 F.2d 1269, 1272 n.3 (10th Cir. 1989). Although we have not applied this rule in a criminal case as far as we are aware, the operative language from Fed. R. App. P. 4 is identical as to civil and criminal appeals. Compare Fed. R. App. P. 4(a)(2) with Fed. R. App. P. 4(b)(2). We

Continued . . .

-11-

# III

Turning to the merits, Mendoza argues that the prosecution breached the plea agreement by failing to recommend a sentence at the low end of his Guidelines range. Because Mendoza's counsel did not object to the prosecution's breach of the plea agreement, we review for plain error. Puckett v. United States, 556 U.S. 129, 133 (2009). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Weiss, 630 F.3d 1263, 1274 (10th Cir. 2010) (citation omitted).

The record shows that as part of Mendoza's plea agreement the prosecution agreed to recommend a sentence at the low end of the Guidelines range. Yet at sentencing, the prosecution ignored this promise and instead emphasized the severity of Mendoza's offense. Nevertheless, the court selected a sentence at the bottom of the Guidelines range.

As a general matter, "[w]here the Government obtains a guilty plea which is predicated in any significant degree on a promise or agreement with the U.S. Attorney, such promise or agreement must be fulfilled to maintain the integrity of a plea." United States v. Villa-Vazquez, 536 F.3d 1189, 1196 (10th Cir. 2008) (quotation omitted). It is plain that the government violated Mendoza's plea agreement. However, to prevail under

thus see no reason to depart from our standard practice of considering the appeal rather than remanding for proper entry of judgment.

-12-

plain error review, Mendoza must show that this breach violated his substantial rights. Weiss, 630 F.3d at 1274. "An error only affects substantial rights when it is prejudicial, meaning that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." Id. at 1274 (quotation and citation omitted).

Mendoza has not shown a reasonable probability that he would have received a lesser sentence absent the government's breach. Mendoza's counsel made the court aware of the prosecutor's obligation to recommend a low-end sentence. And the court was quite clear that it considered a sentence at the bottom of Mendoza's Guidelines range to be "a bargain, relatively speaking." We have no reason to expect the court would have varied from the Guidelines and gone even lower had the prosecution fulfilled its end of the plea agreement.

## IV

We **DENY** the government's motion to dismiss the appeal and **AFFIRM** Mendoza's sentence.