**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 10, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRIAN JOSEPH NIELSEN,

    Defendant - Appellant.

No. 21-8087
(D.C. No. 1:10-CR-00193-SWS-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BACHARACH**, and **EID**, Circuit Judges.
_____

Defendant Brian Joseph Nielsen pleaded guilty in 2010 to one count of interstate shipment of child pornography. One of the conditions of his supervised release prohibited him from accessing "pornographic, sexually oriented, or sexually stimulating" materials. R., Vol. 1 at 20. After this court in _United States v. Koch_, 978 F.3d 719, 722–23 n.1 (10th Cir. 2020), raised concerns about the potential overbreadth of this language, the district court issued a general order in November 2020 stating that it amended the conditions of release of all defendants throughout the district who had the same supervised-release condition as Defendant. The only

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

change relevant to this case is that the new language narrowed the condition to

encompass only depictions of sexually explicit material, as defined by 18 U.S.C.

§ 2256(2)(A).[1]

Defendant's supervised release was revoked in November 2021 after the

district court found that he had committed four violations of the conditions of his

supervised release. Two of his alleged violations were of the modified sexual-

material condition. On appeal from the district court's revocation order, he argues

that those violations should have been dismissed because the court failed to make

certain necessary findings before modifying his sexual-material condition in the

general order, rendering the condition unlawful. Exercising jurisdiction under

28 U.S.C. § 1291, we affirm. A defendant cannot challenge a revocation of

supervised release on the ground that a condition of supervised release was not

supported by adequate findings at the time it was imposed.

## I.     BACKGROUND

In 2010 Defendant was indicted in the United States District Court for the

District of Wyoming on three counts of interstate shipment of child pornography, in

violation of 18 U.S.C. § 2252A(a)(1) and (b)(1), and one count of possession of child

pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). The alleged

---

[1] The revised condition also prohibited accessing child pornography, as defined in 18 U.S.C. § 2256(8), and material containing the obscene visual representation of the sexual abuse of children, as defined in 18 U.S.C. § 1466A. But these provisions are not at issue on appeal.

conduct was that on three separate occasions he sent images and videos of child pornography to an undercover police officer from New Hampshire (posing online as an 18-year-old male from Massachusetts) who was investigating child abuse and online exploitation of children. When the officer received the emails, he captured the sender's IP address and was able to determine that it was assigned to Brian Nielsen of Mills, Wyoming. Law-enforcement officers in Wyoming obtained a warrant to search Defendant's residence in Mills. They seized Defendant's computer and three USB flash drives, which contained hundreds of videos and thousands of images, including photographs of an adolescent boy who appeared to be an inmate at the detention facility where Defendant had worked. During questioning at the police department, Defendant admitted to sending and possessing child pornography and said that he had been working as an activities director for the Boys and Girls Club of America for the past year.

Defendant reached an agreement to plead guilty to one count of interstate shipment in exchange for dismissal of the other counts. The district court[2] sentenced Defendant to 135 months' imprisonment and a life term of supervised release, noting the "chilling" nature of the crimes perpetrated on the victims depicted in the images. R., Vol. 3 at 63. One of the conditions of supervised release prohibited Defendant from possessing any "pornographic, sexually oriented, or sexually stimulating"

---

[2] Then-Chief Judge William F. Downes was assigned to Defendant's case at the time of sentencing. He retired from judicial service on July 24, 2011. On February 4, 2020, the case was reassigned to Chief Judge Scott W. Skavdahl.

material. R., Vol. 1 at 20.[3] Defense counsel did not object to either the condition or

the adequacy of the district court's justification for it. Defendant did not appeal.

In January 2020, one month after Defendant was released on supervision, a

probation officer filed a Petition for Warrant or Summons for Offender Under

Supervision alleging that Defendant committed four violations of his conditions of

supervised release, including one violation of his sexual-material condition. At the

hearing on the charges the government agreed to dismiss Defendant's alleged

violation of his sexual-material condition and he admitted the other violations. He

was sentenced to six months' imprisonment and 15 years of supervised release. The

district court also ordered that Defendant "comply with all conditions of supervision

previously imposed." *Id.* at 31.

In October 2020 this court decided *Koch*, 978 F.3d 719, in which we held that

a district court plainly erred by imposing at sentencing a special condition of

supervised release limiting access to "sexual materials that fall within the ambit of

---

[3] The condition provided:

> The defendant shall not possess, send or receive any pornographic, sexually oriented, or sexually stimulating visual, auditory, telephonic or electronic signs, signals or sounds from any source, unless part of a treatment regimen. He shall not visit bulletin boards, chat rooms or other Internet sites where any pornographic, sexually oriented or sexually stimulating images or messages are discussed. He shall not send or receive e-mail or other documents discussing any pornographic, sexually oriented, or sexually stimulating images or messages.

R., Vol. 1 at 20.

4

the First Amendment" without first finding that the condition was supported by compelling and particularized justifications. *Id.* at 729; *see id.* at 724–28. The condition at issue in *Koch* (which also originated in the District of Wyoming) was virtually identical to Defendant's sexual-material condition. Although the challenge in *Koch* was directed at the adequacy of the procedures employed by the district court in imposing the condition—and not at "any substantive aspects of the condition," *id.* at 722 n.1—this court noted the "exceedingly broad nature" of the condition in rejecting the government's implied request to view the condition as "a restriction on pornography alone," *id.* at 722–23 n.1.

The United States District Court for the District of Wyoming responded promptly to our decision in *Koch*. On November 3, 2020, Chief Judge Scott W. Skavdahl *sua sponte* issued a "General Order Amending Sexual Material Prohibition Special Condition of Supervised Release," which sought to address "concerns regarding the breadth of material potentially encompassed by the [*Koch*] special condition." General Order 2020-13 at 1 (the General Order).[4] The order purported to "amend[] all Special Conditions of Supervised Release" that were identical to Defendant's sexual-material condition to read as follows:

> The defendant shall not access, possess, send or receive any material
> that depicts sexually explicit conduct as defined in 18 U.S.C. § 2256(2)(A)
> in any format, including but not limited to images, books, writings,
> drawings, video games, or visual depiction of such conduct as defined in

---

[4] General Order 2020-13 is publicly available on the district court's website at https://www.wyd.uscourts.gov/sites/wyd/files/General%20Order%202020-13.pdf (last accessed July 11, 2022).

> 18 U.S.C. § 2256(5); any material constituting or containing child pornography as defined in 18 U.S.C. § 2256(8), or any material constituting or containing the obscene visual representation of the sexual abuse of children as defined in 18 U.S.C. § 1466A. The defendant shall not visit bulletin boards, chat rooms, or other Internet sites where any material referenced above is discussed.

*Id.* at 1–2. The General Order was not entered on Defendant's docket, but it directed the probation office to "advise all Defendants to whom this amendment applies or will apply upon being place[d] on Supervised Release." *Id.* at 2. Defendant does not contend that he lacked notice of the General Order.

In June 2021 a probation officer reported that Defendant "accessed pornography in March 2021" and then "accessed pornographic, sexually oriented and sexually stimulating material through a variety of applications between May 1, 2021, [and] May 31, 2021." R., Vol. 1 at 33. Defendant consented to a modification of his supervised-release conditions that prohibited him from accessing the internet on any device for 90 days. He acknowledged in his consent form that he would be required to "abide by all the conditions previously imposed during the period of Supervised Release." *Id.* at 34. The record does not reflect any mention of the General Order.

In August 2021 the present proceedings to revoke Defendant's term of supervised release were initiated. A probation officer reported that Defendant committed six violations of his supervised-release conditions, including several violations of the sexual-material condition as it appears modified in the General Order. As relevant here, Violation 1 charged that Defendant "view[ed] movies depicting sexual acts that showed full adult male nudity, masturbation, and sex." *Id.*

6

at 40. Violation 5 charged that Defendant was in possession of a diary containing a handwritten story that described a dream of a sexually explicit interaction between him and another adult man. And Violation 6 stemmed from Defendant's admission that he viewed adult pornography on his cell phone.

The initial revocation hearing was held on October 15, 2021. At the beginning of the hearing, defense counsel informed the court that the government had agreed to dismiss Defendant's violations of his sexual-material condition in exchange for his admitting two other violations. As the district court questioned Defendant about the factual basis for one violation—contact with a minor outside the presence of an approved adult—Defendant denied the allegation that he was alone with the minor and would admit only that he made contact in the presence of an unapproved adult. The district court decided to continue the revocation hearing, stating, "[G]iven the nature of the allegations in this matter and given the circumstances and the history of this Defendant, I am not willing to accept a dismissal of the other charges and the violations[.]" R., Vol. 3 at 89.

On October 27, before the next hearing, the government and Defendant filed a joint motion to dismiss the three charges of violations of the sexual-material condition (Violations 1, 5, and 6). The basis for the motion was that "there [were] no particularized findings justifying the imposition of the underlying sexual materials special condition on [Defendant]"—referring to the condition as modified by the General Order. R., Vol. 1 at 43. The parties stated, "Based on *Koch* and the availability of an as-applied challenge to the sexual materials special condition, the

7

parties believe that this court must make the findings required by *Koch* before it enforces the sexual materials special condition against [Defendant]." *Id.* at 46.

A second revocation hearing was held on November 2. Defense counsel reiterated his *Koch*-based argument that it was unlawful to modify the sexual-material condition without individualized findings. He also argued that the General Order unlawfully modified the condition without a hearing. At issue was Federal Rule of Criminal Procedure 32.1(c), which provides that "the court must hold a hearing" before modifying conditions of supervised release, Fed. R. Crim. P. 32.1(c)(1), unless, as relevant here, "(B) the relief sought is favorable to the person and does not extend the term of probation or of supervised release; and (C) an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so," *id.* 32.1(c)(2). Defendant argued that this exception to the hearing requirement was inapplicable because (1) "no relief was sought" and (2) "this was not a modification that was favorable to [Defendant] as it continued to curtail constitutionally protected materials that he has a right to and not be limited by this Court without specific findings supporting such curtailing of his fundamental rights." R., Vol. 3 at 105. Finally, defense counsel argued that the modified condition was unlawful as applied to the conduct underlying two of Defendant's violations:

> [I]f that modified condition is applied [to Violation Number 1], it's improper because the definition of "sexually explicit" would preclude [Defendant] from accessing movies that have artistic value that the average person, applying a contemporary community standard, would not find that it appeals to a prurient interest and that nothing in the

8

movies that he was viewing that are the basis for Violation Number 1—there's nothing in them that is patently offensive. And in fact, when taken on the whole, they have serious artistic value.

So as applied, . . . we'd ask the Court to dismiss Violation 1 on that basis . . . ; and we'd also ask the Court to dismiss Number 5 based on the fact that it is—keeping a diary is a protected First Amendment activity and that this—application of any modified condition like this would go well beyond the scope of what would be reasonable or necessary in regards to the sentencing factors.

*Id.* at 106–07.

The district court denied the motion to dismiss Violations 1 and 6. With respect to the *Koch*-based challenge, the court found that "additional information and findings were not required to preclude the scope of information and materials that were limited by the special condition." *Id.* at 112. The court also rejected the notion that a hearing was required under Rule 32.1(c) before modifying the sexual-material condition through the General Order, ruling that Defendant received a favorable modification that "narrow[ed] the restriction." *Id.* at 109. This ruling is not challenged on appeal.[5] With respect to the as-applied challenges, the district court dismissed Violation 5 concerning the diary entry as it presented a "colorable issue" but let the remaining violations go forward. *Id.* at 112.

Two of Defendant's probation officers testified at the November 2 hearing. Officer Aundrea Hines supervised Defendant from the beginning of his most recent

---

[5] Nowhere in Defendant's briefs does he argue that a hearing was required under Rule 32.1(c). He characterizes the original sexual-material condition as "stricter" than the modified condition. Aplt. Reply Br. at 6.

term of supervised release until June 2021. According to Officer Hines, Defendant reported that "if he starts viewing pornography, it can oftentimes lead him down to viewing child pornography, specifically involving, usually, young boys." *Id.* at 173. Officer Shelby Heatherly, who supervised Defendant from June until August 2021, similarly recalled that Defendant "talked about the consequences of continuing to look at porn or sexually oriented material, which included his stance that it was a progression, and it got worse the more he kind of fed into his addiction." *Id.* at 133–34.

At a final revocation hearing on November 19, the district court found that Defendant had committed Violations 1 and 6 of the modified sexual-material condition (in addition to the two other violations Defendant admitted). The court prefaced its findings with a discussion of Defendant's history and characteristics, including (i) the conduct underlying his 2011 sentence; (ii) a clinical interview from June 2012 in which "Defendant described . . . that, quote, I got on my computer, looked at legal porn and then child porn. I sought it out, and it was not accidental," *id.* at 221; and (iii) the testimony of the probation officers from the November 2 hearing. The court reiterated its rejection of Defendant's *Koch* argument, adding that "at least since revocation in February of 2020," the record in this case "supported imposing the [sexual-material] Special Condition." *Id.* at 227. Also, the district court rejected Defendant's as-applied challenge to Violation 1, noting the graphic nature of the material accessed by Defendant.

The district court imposed a 14-month sentence, followed by 15 years of supervised release. It commented that a sentence of 12 months and one day would be appropriate if it erred with respect to the two violations of the sexual-material condition. Defendant filed a notice of appeal of the revocation order that same day.

## II.    ANALYSIS

Defendant's sole argument on appeal is that the two remaining violations of his sexual-material condition—Violations 1 and 6—"should have been dismissed because the district court failed to make particularized findings, at the time it imposed the applicable special condition, as to whether the intrusion on [his] fundamental First Amendment right was justified by compelling circumstances." Aplt. Br. at 1–2. As we understand his point, he is complaining that the district court purported to *modify* his sexual-material condition by the General Order, and that the modification was procedurally inadequate.

Defendant's argument relies primarily on our recent decisions in *Koch* and *United States v. Englehart*, 22 F.4th 1197 (10th Cir. 2022). But there is a dispositive difference between those cases and the case at hand. In *Koch* the defendant directly appealed from the district court's imposition at sentencing of a sexual-material condition. *See* 978 F.3d at 722–23. In *Englehart* the government petitioned to modify the conditions of a defendant who was already on supervised release and had committed several violations; the defendant directly appealed from the district court's order modifying his sexual-material condition and imposing new burdensome

11

conditions. *See* 22 F.4th at 1201–02. In this case, by contrast, Defendant appeals from an order revoking his supervised release.

This distinction controls the outcome. As we declared in *United States v. LeCompte*, 800 F.3d 1209, 1214 n.6 (10th Cir. 2015), "Courts have consistently said that a defendant cannot challenge the condition [of supervised release] on its face at a revocation hearing." *Accord United States v. Helton*, 612 F. App'x 906, 909 (10th Cir. 2015) ("We are in alignment with other circuits in holding that a supervisee cannot challenge a condition itself when responding to a petition to revoke supervised release."). The typical way to challenge an improper condition of supervised release is by an appeal. *See United States v. Wayne*, 591 F.3d 1326, 1334 (10th Cir. 2010) (The supervisee "should have challenged the legal and factual basis of the initial supervised release condition on direct appeal from the sentencing court's judgment."); *United States v. Preacely*, 702 F.3d 373, 376 (7th Cir. 2012) ("The primary problem with [the defendant's] argument is that he raises it too late. The time for [him] to challenge the condition was at sentencing or on direct appeal, not at his revocation hearing.").[6]

---

[6] We do not foreclose the possibility of seeking relief through a collateral attack under 28 U.S.C. § 2255, or by a motion to modify conditions under 18 U.S.C. § 3583(e)(2), *cf. United States v. Begay*, 631 F.3d 1168, 1169–71 (10th Cir. 2011). We note that this court has yet to squarely rule on the proper scope of a § 3583(e)(2) motion in a precedential opinion. *But cf. United States v. Grigsby*, 737 F. App'x 375, 378 & n.5 (10th Cir. 2018) (citing *United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997), for the proposition that the "legality of condition[s] of supervised release may only be challenged on direct appeal or as collateral attack under § 2255").

The rule barring a challenge to a condition of release at the revocation hearing is a specific application of a more general proposition that court orders are to be obeyed. "The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *Maness v. Meyers*, 419 U.S. 449, 459 (1975) (internal quotation marks omitted). It follows from this rule that even if a condition of supervised release is appealed, it must be obeyed while appeal is pending unless a stay is granted. *See id.* at 458 ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."). It is important to note, however, that the supervisee may, of course, still dispute the factual basis for an asserted violation of his condition. And the supervisee may raise at the revocation hearing an as-applied claim that the condition cannot properly be applied to the particular circumstances of the alleged violation. *See LeCompte*, 800 F.3d at 1213–14.

The problem for Defendant is that he is not making an as-applied challenge to his condition of supervised release and the condition of supervised release purportedly imposed by the General Order had not been set aside or stayed at the time he violated it. He claims that he has timely appealed from the General Order because it was never entered on the docket in his case. *See United States v. Mendoza*, 698 F.3d 1303, 1308–09 (10th Cir. 2012) ("[W]e conclude that a judgment is not 'entered on the criminal docket' for purposes of Fed. R. App. P. 4(b)(6) unless

13

judgment is noted on the docket in a publicly accessible manner. . . . Because the criminal docket in [the defendant's] case does not reflect the entry of final judgment, we deny the government's motion to dismiss [the appeal as untimely]."). But even if the appeal from that order is timely, he did not obtain, or even seek, a stay of the order before violating the challenged condition of supervised release. And he has never argued that he lacked notice of the condition.

The dissent suggests that this did not matter because Defendant was unable to appeal the General Order before it was entered in the docket of his case. But this suggestion is misconceived in several respects.

To begin with, it is worth noting that even if Defendant had filed an appeal, that would not in itself excuse his violation of the condition of supervised release. He would be required to comply with the condition while the appeal was pending unless it was stayed during appeal.

Moreover, Defendant had avenues to seek relief from the condition of supervised release before he violated it. He has not disputed that he had notice of the General Order. If he thought that the General Order was valid, he could have filed a notice of appeal even before entry in his docket. Federal Rule of Appellate Procedure 4(b)(2) states: "A notice of appeal filed after the court announces a decision, sentence, or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry." Even if additional steps would need to be taken before we would consider the merits, *but see Mendoza*, 698 F.3d at 1309 n.3 ("Although final judgment was never properly entered, we nevertheless have

14

jurisdiction over this appeal. As long as no question exists as to the finality of the district court's decision, defects in the proper entry of judgment do not affect our appellate jurisdiction." (internal quotation marks omitted)), Defendant could have acted to be sure those steps would be taken so that his appeal could be promptly addressed by this court. For example, he could have filed with us a petition for writ of mandamus to require the district court to enter the General Order on his docket; if the petition noted that Defendant wished to challenge the condition of supervised release and could not appeal until entry on the docket, there is little doubt that this court would have taken prompt action.

As an alternative, Defendant could have pursued relief in district court. He could have filed a motion challenging the General Order and seeking a stay pending further proceedings in district court or on appeal. And he could, of course, have requested the district court to enter the General Order on his docket so that he could appeal.

The one thing that Defendant could not do is take the law into his own hands and decide to disobey an undisturbed order of a court with jurisdiction.

In the above discussion, we have assumed that the General Order was a valid order of the district court. We think, however, that Defendant would have a strong argument that the district court acted beyond its authority in modifying a special condition of his supervised release by means of a general order.[7] But Defendant has

---

[7] The term *general order* (or *standing order*) refers to "orders . . . adopted by district courts . . . as district-wide or division-wide orders, without an opportunity for

not pursued this argument and we dispose of his appeal on other grounds. We note,

however, that even if the General Order was a nullity and could supply him with an

excuse for not complying with the sexual-material condition as modified, then his

original sexual-material condition would still have been in effect. Because the

---

notice or public comment." Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, *Report and Recommended Guidelines on Standing Orders in District and Bankruptcy Courts* at 1 (2009). But the power to issue such orders is limited. To be sure, a court has "inherent authority to regulate the practice of litigants before it." *United States v. Ray*, 375 F.3d 980, 992 (9th Cir. 2004). This authority is recognized in Federal Rule of Criminal Procedure 57(b), which states that a "[a] judge may regulate practice in any manner consistent with federal law, [the Federal Rules of Criminal Procedure], and the local rules of the district." General Order 2020-13, however, does not regulate practice or procedure— it purports to substantively modify existing special conditions of supervised release for a class of defendants. We are not aware of any law authorizing such a modification by general order rather than by proceeding in each applicable case. One could therefore assume that the General Order was a nullity. Perhaps a viable alternative would have been a general order instructing probation officers on the enforcement of a supervised-release condition. *See* 18 U.S.C. § 3602(a) (Probation officers serve "under the direction of the court making the appointment."). This approach has been used to restrict the application of already-imposed conditions in response to changes in the law governing supervised-release conditions. *See, e.g.*, *In the Matter of: Enforcement and Imposition of Standard Conditions of Supervised Release and Probation No. Twelve*, No. 19-MC-00004-27 (D.N.M. July 10, 2019) ("In accordance with [*United States v. Cabral*, 926 F.3d 687, 691 (10th Cir. 2019)], the United States Probation Office . . . shall cease enforcing the risk-notification condition for those Defendants already under supervision, unless Court approval is first obtained."); *Standing Order Pursuant to 18 U.S.C. § 3583(e)(2) Ordering the Probation Office to Construe the Thirteen Standard Conditions of Supervised Release* (N.D. Ill. May 24, 2015) (Reinhard, J.) ("Based on recent caselaw authority from the Seventh Circuit regarding the impermissible vagueness of certain conditions of supervised release, the court hereby orders the probation office to construe and apply the above thirteen conditions as hereinafter modified to defendants currently on supervised release or sentenced but not yet on supervised release in the following manner . . . ." (citations omitted)).

16

conduct underlying his revocation would have violated both conditions—he has not argued otherwise—the outcome here would remain the same.

### III.    CONCLUSION

We **AFFIRM** the sentence imposed by the district court upon revocation of Defendant's term of supervised release.

Entered for the Court

Harris L Hartz
Circuit Judge

*United States v. Brian Joseph Nielsen*, No. 21-8087
**BACHARACH**, J., dissenting

I respectfully dissent. The district court broadly prohibited Mr. Nielsen's viewing of adult pornography. After entering this broad prohibition, the court issued a general order, modifying the conditions for many defendants (including Mr. Nielsen) subject to supervised release. Mr. Nielsen argues that the district court erred by imposing the modified conditions without making particularized findings. The government conceded error.

Faced with this concession, the district court tried to cure its error by conducting a hearing and making new findings. The resulting question is whether the new findings cured the error.

The majority declines to answer this question, reasoning that we don't consider facial challenges initiated in revocation proceedings. But we decline to consider those challenges only when the defendant could have appealed the conditions earlier.

That's not the case here. Mr. Nielsen couldn't appeal the conditions any earlier than he did because the district court hadn't entered the disputed conditions in his docket. So I would consider the merits of Mr. Nielsen's challenge to the conditions.

In considering this challenge, I would reverse because the district court didn't cure its failure to make particularized findings when entering the general order.

1. **Mr. Nielsen appealed the disputed conditions at his first opportunity.**

Defendants can challenge supervised release conditions in two ways: facially and as applied. The parties agree that Mr. Nielsen could raise an as-applied challenge now even though he didn't appeal when the district court modified the conditions. But at oral argument, Mr. Nielsen disavowed an as-applied challenge. The only challenge left would be a facial challenge.

The majority points out that ordinarily, a defendant can't wait until a revocation proceeding to make a facial challenge to the conditions. We and other circuits have generally held that waiting until the revocation proceeding is too late because the defendant could have appealed the supervised release conditions when they were imposed. *See, e.g.*, *United States v. Helton*, 612 F. App'x 906, 909 (10th Cir. 2015) (unpublished) (attributing the bar on facial challenges in revocation proceedings to the presumed ability of the supervisee to "timely challenge a condition 'on direct appeal from the sentencing court's judgment'" (quoting *United States v. Wayne*, 591 F.3d 1326, 1334 (10th Cir. 2010))); *see also Wayne*, 591 F.3d at 1334 (concluding that the defendant was time-barred from

2

making a facial challenge to a supervised release condition at a compliance hearing because she had failed to appeal from the judgment imposing the sentence); *accord United States v. Johnson*, 138 F.3d 115, 117–18 (4th Cir. 1998) (declining to review the defendant's facial challenges to his conditions of supervised release after revocation of his supervised release because he should have appealed the sentence); *United States v. Preacely*, 702 F.3d 373, 376 (7th Cir. 2012) (concluding that a supervisee couldn't wait until the revocation hearing to challenge a condition of supervised release because the time "to challenge the condition [had been] at the sentencing or on direct appeal"); *United States v. Key*, 832 F.3d 837, 840 (8th Cir. 2016) ("We are skeptical that a defendant who failed to appeal the imposition of a condition of release can bring a facial challenge to the condition following revocation."). But what if the defendant couldn't have appealed the supervised release conditions when they were imposed? That's the situation here.

In every criminal case, the district court must enter orders in the defendant's criminal docket. Fed. R. Crim. P. 55. Entry in the docket is essential to "start[] the appeal deadline." *United States v. Mendoza*, 698 F.3d 1303, 1307 (10th Cir. 2012) (citing Advisory Committee Note to 1966 Amendments, *reprinted in* 39 F.R.D. 69, 200 (1966)); *see also Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384 (1978) (per curiam) (explaining that the Federal Rules of Civil Procedure governing entry of

3

orders in the docket serve "to clarify when the time for appeal . . . begins to run"). Given this purpose, the time to appeal begins with entry of an appealable order in the docket of the criminal case. Fed. R. App. P. 4(b)(1); *see* Fed. R. App. P. 4(b)(6) ("A judgment or order is entered for purposes of this Rule 4(b) when it is entered in the criminal docket."). Until the order is entered in the criminal case, an appeal is premature. *See United States v. West*, 240 F.3d 456, 458–59 (5th Cir. 2001) (concluding that the defendant's appeal of her criminal judgment was premature because the district court had not yet entered the judgment (under review) in the docket). So a defendant can't appeal until the district court has entered an appealable order in the docket. *See Constien v. United States*, 628 F.3d 1207, 1210 (10th Cir. 2010) ("When prematurity of a notice of appeal cannot be 'cured' by [Federal Rule of Appellate Procedure 4(a)(2)], the aggrieved party must await a final judgment before filing a notice of appeal to challenge the allegedly erroneous ruling.").[1]

---

[1]    The Federal Rules of Appellate Procedure provide an exception when

- the district court announces an otherwise appealable ruling and

- a party files a notice of appeal before the district court enters the order in the docket.

Fed. R. App. P. 4(a)(2) (civil cases), 4(b)(2) (criminal cases). Under this exception, we treat the appeal as filed when the district court enters the order in the docket. Fed. R. App. P. 4(a)(2), 4(b)(2). Even when the district court doesn't ever enter the order in the docket, we obtain jurisdiction when there's "no question as to the finality of the district court's

4

The district court never entered the general order in Mr. Nielsen's docket. As a result, he couldn't appeal the modification of his conditions through the general order. If he had appealed any earlier than he did, we'd have lacked jurisdiction. *See* note 1, above (citing *Warren v. Am. Bankers Ins. of Fla.*, 507 F.3d 1239, 1245 (10th Cir. 2007)).

The only reason that we have jurisdiction now is that when the district court revoked supervised release, the court reinstituted the modified conditions and entered the order in Mr. Nielsen's docket. He filed a notice of appeal the same day. But he couldn't have appealed the conditions until entry of the order in Mr. Nielsen's docket.

---

decision." *United States v. Mendoza*, 698 F.3d 1303, 1309 n.3 (10th Cir. 2012) (quoting *Burlington N. R.R. Co. v. Huddleston*, 94 F.3d 1413, 1416 n.3 (10th Cir. 1996)).

This exception doesn't apply here. The district court didn't announce the modification of Mr. Nielsen's conditions, and a substantial question exists regarding the finality of the general order in Mr. Nielsen's case. No one suggests that his deadline to appeal would have started once he learned of the modification.

He did eventually learn of the general order and its application to him. But we don't know when that was. Because the court didn't announce its modification of Mr. Nielsen's conditions and the court's failure to enter the general order in the docket affects timeliness of the appeal, the exception doesn't apply and jurisdiction never passed to us. *See Warren v. Am. Bankers Ins. of Fla.*, 507 F.3d 1239, 1245 (10th Cir. 2007) (concluding that jurisdiction didn't pass to us when the notice of appeal remained in suspension prior to entry of an order of dismissal).

5

In these limited circumstances, we can't fault Mr. Nielsen for waiting until the revocation proceeding to challenge the disputed conditions. He needed to wait because any prior appeal would have been premature. I would thus address the merits of Mr. Nielsen's challenge.

The majority doesn't question prematurity had Mr. Nielsen filed a notice of appeal to the general order, but speculates on a series of possible events that might have led to an appealable order:

1. Under the federal rules, an "announcement" of the decision (the general order) meant that the appeal would have been treated as filed upon entry of the general order in Mr. Nielsen's criminal case. Fed. R. App. P. 4(b)(2); *see* note 1, above.

2. Because of this federal rule, we could not have considered Mr. Nielsen's appeal until the district court entered the general order in Mr. Nielsen's criminal case.

3. Mr. Nielsen could have requested a mandamus petition to require entry of the general order in his docket.

The majority's speculation overlooks the reason for prohibiting facial challenges initiated in revocation proceedings and stems from a misinterpretation of the federal rule.

The majority relies on the general prohibition of facial challenges to a supervised release condition made in revocation proceedings. That prohibition stems from the assumption that the defendant could have

6

appealed the condition when it was imposed. *See* pp. 2–3, above.[2] And Mr. Nielsen couldn't appeal before entry of the revocation order.

Despite his inability to appeal, the majority speculates about other actions that Mr. Nielsen could have taken. The majority rests that speculation on Federal Rule of Appellate Procedure 4(b)(2), which provides that when a party files a notice of appeal "after the court *announces* a decision, sentence, or order—but before the entry of the judgment or order—[the notice of appeal] is treated as filed on the date of and after the entry." Fed. R. App. P. 4(b)(2) (emphasis added); *see* note 1, above. The majority says that given this rule, Mr. Nielsen could have taken "additional steps" to obtain entry of the general order in his docket. Maj. Order & Judgment at 14.

But this rule wouldn't apply if Mr. Nielsen had prematurely appealed the general order. The rule applies only when a district court "announces" its order, decision, or sentence; and neither party has suggested that the court announced its general order, much less announced it as a decision or

---

[2]    The majority attributes this restriction to the need for compliance with a condition while it's in place. Maj. Order & Judgment at 13. For this proposition, the majority relies on *Maness v. Meyers*, 419 U.S. 449 (1975). There the Court discussed only the availability of contempt when an attorney advises a client to disobey a subpoena. *Id.* at 459. In that discussion, the Court observed that people must comply with orders absent a stay, pointing out that "the remedy is to appeal" the order. *Id.* The Court said nothing about supervised release or the ability to challenge orders that can't be appealed.

order in Mr. Nielsen's case. Because the rule doesn't apply, we would have had to dismiss the premature appeal for lack of jurisdiction. *See* pp. 3–5, above.

But let's suppose that we would have applied the rule anyway and waited for "additional steps . . . to be taken." Maj. Order & Judgment at 14. And let's suppose further that Mr. Nielsen would have requested mandamus to require entry of the general order in his docket. And we can even suppose further that we'd have granted mandamus. Why would this theoretical set of possibilities bear on Mr. Nielsen's right to challenge his conditions? Regardless of what might have happened, he appealed the conditions at his first actual opportunity. So there's no reason to prohibit consideration of his facial challenge.

**2.    Mr. Nielsen's other alleged options shouldn't affect our disposition.**

The majority relies not only on speculation about what might have happened if Mr. Nielsen had prematurely appealed, but also on the availability of three other options:

1.    comply with the allegedly unconstitutional conditions and forgo an appeal,

2.    challenge the conditions in district court and move for a stay of the conditions while those proceedings remained pending, or

3.    ask the district court to enter the general order in his docket so that he could appeal.

8

Mr. Nielsen presumably did have other options. But those options didn't include the ability to appeal the conditions. And we've disallowed facial challenges to supervised release conditions through revocation proceedings only because we've assumed that the defendant could have appealed the conditions when they had been imposed. *See* pp. 2–3, above (citing cases). And we would have lacked jurisdiction if Mr. Nielsen had appealed from the order imposing the supervised release conditions. So regardless of other options for Mr. Nielsen, we'd have no reason to disallow his challenge to the conditions.

The majority suggests that the district court might have revoked the supervised release even if the conditions had been unconstitutional. Perhaps the majority is right. That seems unlikely because the district court said that if the disputed conditions were deemed invalid, the sentence would have been shorter by roughly two months (twelve months and a day rather than fourteen months). *See* p. 11, below.

Regardless of what the district court would have done, though, we shouldn't decline to consider Mr. Nielsen's challenge to the conditions themselves. No one suggests that Mr. Nielsen could have appealed the conditions any earlier than he did. And the only reason that we've ever given for disallowing facial challenges to conditions in revocation proceedings is that the defendant could have appealed those conditions

9

when they were imposed. That's not the case here, so we have no reason to disallow Mr. Nielsen's facial challenge to the conditions.

**3.     The district court erred by failing to make particularized findings when modifying Mr. Nielsen's conditions.**

On the merits, I would credit that challenge.

Everyone appears to agree that

- the district court conducted the revocation proceedings based on alleged violations of the condition stated in the general order,

- the district court applied the general order to Mr. Nielsen without particularized findings, and

- the lack of particularized findings constituted an error.

Despite agreeing that the district court erred, the government argues that the district court cured that error by later making particularized findings that would have validated the general order. I disagree.

The district court did make particularized findings when revoking supervised release. In making those findings, however, the district court relied in part on events taking place in 2021—after the court had imposed the condition from the general order on Mr. Nielsen. R. vol. III, at 222, 226. A court cannot support a decision based on evidence that hadn't existed at the time of the decision. So the district court's new findings, even if particularized, wouldn't have cured the lack of particularized findings when the court imposed the condition from the general order.

10

**4.      The district court's error wasn't harmless.**

The government argues that even if the court had erred in modifying the conditions, any error would have been harmless.

Nonconstitutional errors are harmless unless they "had a 'substantial influence' on the outcome or leave[] one in 'grave doubt' as to whether [they] had such effect." *United States v. Griffin*, 389 F.3d 1100, 1104 (10th Cir. 2004) (quoting *United States v. Mejia-Alarcon*, 995 F.2d 982, 990 (10th Cir. 1993)). For constitutional errors, the government must prove harmlessness beyond a reasonable doubt. *See Chapman v. Cal.*, 386 U.S. 18, 24 (1967); *Malone v. Carpenter*, 911 F.3d 1022, 1029 (10th Cir. 2018).

Regardless of which standard applies, the error wasn't harmless. The district court said that Mr. Nielsen's sentence would have been shorter by about two months without reliance on the disputed conditions. R. vol. III, at 242 ("[J]ust so it's clear, to the extent a court would somehow unreasonably conclude that the Special Condition was not enforceable at the time the violations occurred in this matter as noted in 1 and 6, then the sentence would be 12 months and a day. . . [rather than] 14 months."). The district court's statement shows that the error was not harmless. *See United States v. Serrano-Dominguez*, 406 F.3d 1221, 1224 (10th Cir. 2005) (finding that the district court's announcement of an alternative sentence under the methodology proposed by the defendant "eliminates any need to speculate about what it would do on remand"); *see also United States v.*

11

*Gieswein*, 887 F.3d 1054, 1061 (10th Cir. 2018) (stating that a procedural error is harmless only if "the district court would have imposed the same sentence" without the error (quoting *United States v. Kieffer*, 681 F.3d 1143, 1165 (10th Cir. 2012))). So I would reverse and remand with instructions to vacate the disputed conditions and resentence Mr. Nielsen for the revocation of supervised release.